# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THOMAS JAMES VALENTINE,**

**Plaintiff,**

**v.**                                                    **Case No: 6:18-cv-1354-Orl-LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

_____

# MEMORANDUM OF DECISION

Thomas Valentine (Claimant) appeals the Commissioner of Social Security's (Commissioner) final decision denying his applications for disability benefits. (Doc. 1). The Claimant raises two assignments of error challenging the Commissioner's final decision and, based on those assignments of error, requests that the matter be reversed and remanded for further proceedings. (Doc. 17 at 9-11, 19-20, 22). The Commissioner argues that the Administrative Law Judge (ALJ) committed no legal error and that his decision is supported by substantial evidence and should be affirmed. (*Id*. at 11-23). Upon review of the record, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.

## I. Procedural History

This case stems from the Claimant's applications for disability insurance benefits and supplemental security income. (R. 199, 208-14). The Claimant originally alleged a disability onset date of May 21, 2016, which he later amended to June 1, 2016. (R. 199, 208). The Claimant's applications were denied on initial review and on reconsideration. The matter then proceeded to a hearing before an ALJ. On March 29, 2018, the ALJ entered a decision denying the

Claimant's applications for disability benefits. (R. 12-24). The Claimant requested review of the ALJ's decision, but the Appeals Council denied his request for review. (R. 1-3). This appeal followed.

## II.    The ALJ's Decision

The ALJ found that the Claimant suffered from the following severe impairments: degenerative disc disease of the cervical spine; obesity; diabetes mellitus; and hypertension. (R. 15). The ALJ also found that the Claimant suffered from the following non-severe impairments: dyslipidemia; carotid artery stenosis; status post right thigh wound with skin graft surgery; cataract; anemia; adjustment disorder; and a history of substance abuse. (R. 15-18). The ALJ determined that none of the foregoing impairments, individually or in combination, met or medically equaled any listed impairment. (R. 18).

The ALJ proceeded to find that the Claimant has the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c)[1] with the following specific limitations:

> [T]he claimant can lift, carry, push and pull fifty (50) pounds occasionally and twenty-five (25) pounds frequently. The claimant can sit, stand and walk for up to six (6) hours each out of an 8-hour workday. He can frequently balance, stoop and crouch but, only occasionally kneel and crawl. He can . . . only occasionally climb ramps, stairs, ladders, ropes or scaffolds. The claimant can have occasional exposure to extreme cold, extreme heat, vibration, and hazards, such as unprotected heights and moving machinery.

(R. 18). Based on this RFC, the ALJ found that the Claimant could perform his past relevant work

---

[1] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

as a sales route driver.  (R. 22-23).  In addition, the ALJ found that the Claimant could perform other work in the national economy, including conveyor feeder, floor waxer, and box bender.  (R. 23-24).  In light of these findings, the ALJ concluded that the Claimant was not disabled between his alleged onset date, June 1, 2016, through the date of the ALJ's decision, March 29, 2018.  (R. 24).

## III.    Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    Analysis

The Claimant raises two assignments of error: 1) the ALJ failed to satisfy his duty to fully and fairly develop the record; and 2) the ALJ's decision to assign Dr. Bettye Stanley's opinion little weight was not supported by substantial evidence.  (Doc. 17 at 9-11, 19-20).  The Court will

address each assignment of error in turn.

## A. Duty to Develop.

The Claimant argues that given the limited number of treatment records from the relevant period the ALJ should have ordered a consultative examination. (Doc. 17 at 10).[2] The ALJ did not order a consultative examination and, according to the Claimant, he instead "cherry picked" and "mischaracterized" findings from the treatment records to support his ultimate determination that the Claimant was not disabled. (*Id*. at 10-11). The Claimant argues that the ALJ failed to apply the correct legal standards and his decision is not supported by substantial evidence. (*Id*. at 11).

The Commissioner contends that the ALJ had sufficient evidence to make an informed decision and the Claimant has not shown any evidentiary gaps in the record that should have been addressed through a consultative examination. (*Id*. at 12-13). Further, the Commissioner contends that the ALJ did not cherry pick or mischaracterize the treatment records from the relevant period. (*Id*. at 16-18). Thus, the Commissioner argues that the ALJ was under no obligation to order a consultative examination and his decision was supported by substantial evidence. (*Id*. at 18-19).

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).[3] This duty generally requires the ALJ to assist in gathering medical evidence, and to order a consultative examination when such an evaluation is necessary to make an

---

[2] The Claimant contends that the Office of Disability Determinations (ODD) attempted to set up a consultative examination, but was unable to reach the Claimant, therefore the examination was never conducted at the lower level of the administrative proceedings. (Doc. 17 at 10).

[3] The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). In this case, the Claimant was represented during the administrative proceedings. (R. 33). Therefore, the ALJ only had a basic duty to develop the record.

informed decision. 20 C.F.R. §§ 404.1512(b), 416.912(b). "Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)).[4] There must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development. *Graham*, 129 F.3d at 1423 (citing *Brown*, 44 F.3d at 934-35). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985); *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (listing situations that may require a consultative examination).

The Claimant treated at the Orange Blossom Family Health Center (and nowhere else) on seven occasions during the relevant time period. (R. 347-64, 450-57, 1149-82). In each instance, the Claimant was treated by an APRN. (*Id.*). The Claimant routinely denied suffering any problems, with the only exception being a report of a sore right arm in April 2017. (*Id.*). Similarly, the Claimant's physical examinations were often unremarkable, with the only exceptions being an observation that his "feet showed an abnormal appearance" in February 2017 and an observation that his "shoulders showed abnormalities" in April 2017. (*Id.*). The treatment records, however, did not provide any details about these abnormalities, which were not observed

---

[4] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

during subsequent examinations. (*See* R. 1149-64). During this period, the Claimant was assessed with various impairments, including hypertension, diabetes mellitus without complication, hyperlipidemia, arthropathy,[5] alcohol disorder, and nicotine dependence. (R. 347-64, 450-57, 1149-82).[6]

## 1. The ALJ was Under no Duty to Order a Consultative Examination

The Claimant points to several things in support of his argument that the ALJ failed to sufficiently develop the record. First, the Claimant points to the dearth of treatment records from the relevant period. (Doc. 17 at 10).[7] Second, the Claimant points to the ODD's attempt to schedule a consultative examination during its initial review of his applications for disability benefits. (*Id.*). Third, the Claimant points to the fact that he was treated by APRNs who did not conduct "in-depth" examinations. (*Id.*). For these reasons, the Claimant argues that the ALJ should have further developed the record by ordering a consultative examination. (*Id.* at 10-11).

None of these proffered reasons are persuasive. Specifically, the Claimant has cited no authority requiring an ALJ to order a consultative examination because only a limited amount of

---

[5] Arthropathy is defined as "a disease of a joint." Meriam-Webster, *arthropathy*, https://www.merriam-webster.com/dictionary/arthropathy (last visited September 4, 2019).

[6] The Claimant was assessed with these impairments on more than one occasion during the relevant period. (R. 351, 359, 452, 1154, 1162, 1170, 1179-80). The Claimant was also assessed with dermatitis and mild to moderate depression once during the relevant period. (R. 1179-80).

[7] The record contains more than one thousand pages of medical records dated between 2000 and 2017. (R. 343-1586). Only a small portion of those records are from the relevant time period. (R. 347-64, 450-57, 1149-82). While the ALJ focused much of his analysis on the records from the relevant time period, he does provide a brief overview of some pre-onset medical records to provide context about the Claimant's impairments. (R. 19-21). The Claimant does not argue that the ALJ erred with respect to any of the pre-onset medical records. (*See* Doc. 17 at 9-11, 19-20). Thus, there is no need to discuss the pre-onset medical records in this case.

treatment records exist, because the ODD attempted to schedule an examination,[8] or because the Claimant only treated with APRNs during the relevant period. (*See* Doc. 17 at 10-11). The lack of such authority comes as no surprise given that the relevant inquiry is whether there is an evidentiary gap that must be filled in order to avoid unfairness or clear prejudice. *Graham*, 129 F.3d at 1423. Thus, unless the Claimant can point to some evidentiary gap that could have been filled, it is of no moment that the Claimant did not put forth extensive medical records, or that the ODD attempted, but failed, to schedule an exam, or that all of the Claimant's treatment records are from APRNs.

The Claimant seems to suggest that the ALJ needed additional medical records, and that such records must include an assessment and/or opinion from a physician in order to properly determine whether the Claimant became disabled between the alleged disability onset date and the date of the decision. (*See* Doc. 17 at 10-11). The ALJ, however, was under no such obligation so long as the record contained sufficient evidence to determine whether the claimant is disabled. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The [ALJ] . . . is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); *Wind v. Barnhart*, 133 F. App'x

---

[8] The ODD's attempt to schedule a consultative examination occurred during its initial evaluation of the Claimant's applications for disability. On October 24, 2016, the ODD attempted to contact the Claimant's representative to request, among other things, the "need" to arrange an "exam." (R. 282). The ODD could not reach the Claimant's representative and left a voicemail, in which it stated that if it did not hear from the Claimant's representative within twenty-four hours it would close out his claim. (*Id.*). Apparently, the Claimant's representative did not return the ODD's call, and, on October 26, 2016, the ODD denied the Claimant's applications for disability benefits. (R. 92-93). The record does not further distill exactly why the ODD thought it "needed to set up an exam," nor does the Claimant explain why his representative did not request one while the case was pending on reconsideration or before the ALJ. This paucity of evidence, coupled with a lack of any legal authority, is insufficient to establish that the ALJ erred when he did not order a consultative examination.

684, 693 (11th Cir. 2005) (noting that an ALJ is "not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is unnecessary"). While there were a limited number of treatment records during the relevant period, those treatment records show that the Claimant rarely complained about any issues, and any issues that were observed, such as abnormalities with his feet and shoulders, were only observed once during the relevant period. (R. 347-64, 450-57, 1149-82). The Claimant has not identified – and the Court does not find – any specific inconsistency or gap in the record which should have been addressed through a consultative examination. Ultimately, Claimant must bear the responsibility and the consequences for the limited medical record, as it was her burden, not the ALJ's, to produce the medical evidence supporting her claim for disability. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.") (citations omitted).

The Court finds that the medical records in evidence were sufficient for the ALJ to make an informed decision as to whether the Claimant became disabled between his alleged disability onset date and the date of the decision. Therefore, the Court finds that the ALJ did not error by failing to order a consultative examination.

### 2. The ALJ did not Cherry-Pick or Mischaracterize the Record

The Claimant next argues that the ALJ cherry-picked and mischaracterized findings from the Orange Blossom Family Health Center treatment records to support his determination that the Claimant was not disabled. (Doc. 17 at 10-11). However, the Claimant has not identified any records that the ALJ supposedly "cherry-picked" in order to reach his decision. And with respect to his assertion that the ALJ mischaracterized the treatment records, the Claimant only points to the

ALJ's finding that the treatment records repeatedly did not document any observations of musculoskeletal problems despite observations of "abnormalities" in the Claimant's feet and shoulders. (*Id.*). According to the Claimant, the ALJ misrepresented the treatment records, and therefore the ALJ's decision is not supported by substantial evidence.

The ALJ addressed various aspects of the treatment records from the relevant period. (R. 19-21). While the ALJ did not mention every detail contained in those treatment records, it is axiomatic that the ALJ need not discuss each and every piece of medical evidence contained within a particular treatment note. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered her medical condition as a whole." (internal quotation marks omitted)). Here, considering the ALJ's discussion of the treatment records, the Court is not persuaded that he cherry-picked evidence to support his determination that the Claimant was not disabled. Instead, it appears that the ALJ thoroughly considered the relevant treatment records and considered the Claimant's impairments as a whole. Thus, the Court finds the Claimant's argument that the ALJ cherry-picked the record unpersuasive.

The Court is also not persuaded that the ALJ mischaracterized the treatment records. The only alleged mischaracterization involves the ALJ's finding that the treatment records "repeatedly did not document any observations of . . . musculoskeletal . . . problems." (Doc. 17 at 10 (citing R. 21). The Claimant contends this finding ignores the observations of feet and shoulder "abnormalities" and assessments of arthropathy. (*Id*. at 10-11). With respect to the observations noted under the musculoskeletal portion of the Claimant's physical examinations, it is unclear what the abnormalities were and whether they caused any functional limitations. The same is true for

the assessment of arthropathy, which was assessed in some situations despite the lack of subjective complaints or unremarkable examinations. (R. 1149-64). Thus, the Court cannot say that the ALJ mischaracterized the record by concluding that the treatment records repeatedly did not document any observations of musculoskeletal problems. To the contrary, except for two nonspecific abnormalities, every other examination of the Claimant's musculoskeletal system was unremarkable. Therefore, the Court is not persuaded that the ALJ mischaracterized the record, but, instead, finds that the ALJ's summary of the treatment notes from the relevant period is supported by substantial evidence.

In light of the foregoing, the Court rejects the Claimant's first assignment of error.

**B. Dr. Stanley**

The Claimant contends that the ALJ improperly substituted his opinion for that of Dr. Stanley's by relying on the same treatment records to reach a different conclusion then Dr. Stanley concerning the Claimant's RFC. (Doc. 17 at 19-20). Thus, the Claimant argues that the ALJ erred by assigning Dr. Stanley's opinion little weight. (*Id*.).

The Commissioner contends that the ALJ properly considered Dr. Stanley's opinion along with the other evidence of record and, when considering the record as a whole, including treatment records post-dating Dr. Stanley's opinion, the ALJ appropriately assigned Dr. Stanley's opinion little weight. (*Id*. at 20-22).

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In doing so, the ALJ

must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The opinion of a non-examining physician is generally entitled to little weight and, "taken alone, do[es] not constitute substantial evidence." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii) (2016), 416.927(e)(2)(ii) (2016); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

Dr. Stanley did not treat or examine the Claimant. Instead, Dr. Stanley reviewed the medical records through the date of her opinion and, based on those records, completed an RFC assessment on January 10, 2017. (R. 103-04). Dr. Stanley's opinions concerning the Claimant's ability to lift, carry, sit, stand, and walk limited him to light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). (R. 102).

The ALJ considered Dr. Stanley's opinion and assigned it little weight, explaining:

> This is inconsistent with the medical records within the relevant period. The examinations at Orange Blossom repeatedly did not document any observations of problems with musculoskeletal or neurological problems. Further, it was regularly observed gait and stance were normal and ambulation was not limited. In addition,

the examinations repeatedly noted blood pressure was normal, the monofilament examination of the foot was normal and the laboratory results did not indicate extremely high blood sugar levels or A1c (Exhibits B1F, B3F, B11F, B16F). Within the relevant timeframe, the records have not indicated there were serious medical complications, surgical procedures, or other significant changes since the prior decision. In fact, the examinations within this time have been routinely unremarkable.

(R. 21-22).

The Claimant's arguments as to this assignment of error are unavailing. First, the Court notes that Dr. Stanley's opinion was not entitled to any special deference since she was a non-examining physician. *Broughton*, 776 F.2d at 962. Second, the ALJ considered treatment records that Dr. Stanley did not review, specifically, medical records from after January 10, 2017 through December 31, 2017. Thus, this is not a situation where the ALJ considered the same exact evidence as the physician in question and, based on that evidence, reached a different conclusion. Instead, the ALJ had a broader picture of the Claimant's longitudinal medical record and, based on that additional information, concluded that Dr. Stanley's opinion was inconsistent with the treatment records from the relevant time period. (R. 21-22). Thus, the Court finds that the ALJ did not substitute his opinion for that of Dr. Stanley and that the reasons he gave in support of the weight he assigned to Dr. Stanley's opinion are supported by substantial evidence.

In light of the foregoing, the Court rejects the Claimant's second and final assignment of error.

## V.    Conclusion

Accordingly, it is **ORDERED** that:

1.   The Commissioner's final decision is **AFFIRMED**.

2.   The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner and against the Claimant and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on September 4, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Eric S. Fulcher
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801